**Gary L. NUSPL and Cheryl A. Nuspl, Plaintiffs/Appellants,**

v.

**MISSOURI MEDICAL INSURANCE COMPANY and Rollins Burdick Hunter Company of Missouri, Defendants/Respondents.**

No. 61465.

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 15, 1992.

Linda L. Hahn, St. Louis, for plaintiffs/appellants.

Ian P. Cooper, Jennifer Joyce McGrath, Robert S. Rosenthal, Steven H. Schwartz, St. Louis, for defendants/respondents.

GARY M. GAERTNER, Presiding Judge.

Appellants, Gary and Cheryl Nuspl, appeal the dismissal of their suit for contract reformation, breach of contract, and negligence. The Circuit Court of the City of St. Louis dismissed appellants' suit against both respondents, Missouri Medical Insurance Company ("Momedico") and Rollins Burdick & Hunter ("RBH"), on statute of limitations grounds. We affirm in part and reverse in part.

On November 25, 1972, appellants' son, Keith Nuspl,[1] was born. As a result of alleged medical malpractice, Keith sustained serious injuries which, appellants claim, eventually resulted in his death on February 20, 1990. Appellants filed suit against Dr. Hugh Smith, the obstetrician who delivered Keith, on July 11, 1985, and Dr. Smith was served on December 5, 1985.

Until 1979, Dr. Smith was covered by a "claims made" medical malpractice policy, which he purchased from Lloyd's of London. A policy of this type covers only those claims made while the policy is in force. In 1979, however, Dr. Smith changed his malpractice coverage to an "occurrence" type policy, which he purchased from respondent Momedico. This type of policy covers the policy holder for all events which occur while the policy is in effect, regardless of when the claims for those events are made. Momedico's policy contained a limited prior acts endorsement, which provided Dr. Smith with coverage for acts committed between December 1, 1976, and the date of the policy's inception in 1979. These circumstances left a gap period in Dr. Smith's malpractice coverage for any potential claims occurring prior to December 1, 1976, which had not yet been filed. Appellants' suit, which arose from acts occurring on November 25, 1972, and had not been filed until July 11, 1985, fell within that gap.

On January 8, 1991, appellants and Dr. Smith entered into a consent judgment for one million dollars. In addition, Dr. Smith assigned all causes of action against his insurance carriers to appellants. In return, appellants agreed not to levy execution on any property owned by Dr. Smith. Appellants filed the instant suit against Momedico that same day, claiming Dr. Smith's policy should have provided coverage all the way back to 1972, as he allegedly requested. On May 29, 1991, appellants amended their suit to name RBH, Dr. Smith's insurance agent in the above transaction, as an additional defendant, alleging RBH failed to request adequate coverage for Dr. Smith. Both Momedico and RBH moved for judgment on the pleadings, based on the statute of limitations. After oral argument and submission of written memoranda, the court sustained respondents' motions on January 23, 1992. On January 30, the court entered a supplemental order clarifying the January 23 order. Appellants appeal the court's entry of judgment on the pleadings.

For their only point on appeal, appellants claim their causes of action were not barred by the applicable statute of limitations. We partially agree.

In reviewing a judgment granted on the pleadings, we consider only such facts as were well pleaded in appellants' petition below. *Tomlinson v. Kansas City*, 391 S.W.2d 850, 852–53 (Mo.1965). Respondents do not claim insufficiency of the pleadings to state a cause of action; respondents' only contention is that the actions are time-barred.

## BREACH OF CONTRACT/NEGLIGENCE CLAIMS

All parties agree the applicable statute of limitations for negligence claims is five years. RSMo § 516.120 (1986). There is, however, some dispute regarding breach of contract claims. Appellants averred in their petition that, because the claims were based on the written insurance policy, and

---

1. Keith Nuspl will hereafter be referred to as "Keith". Use of his first name is for clarity only; no disrespect is intended.

not an oral contract, the applicable statute of limitations is ten years. RSMo § 516.-110 (1986). We do not address this issue because the trial court made no finding on this subject, therefore the question is not properly before us.

■ Respondents' contend the causes of action accrued, and the limitations period began to run, either (a) when the policies were first delivered in 1979, or (b) when suit was filed against Dr. Smith on July 11, 1985. For respondents to prevail, one of the above contentions must be correct as a matter of law. We conclude respondents are incorrect.

RSMo § 516.100 (1986) provides, in relevant part:

[T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment ...

As respondents point out, the phrase "capable of ascertainment" refers to the fact of damage, not the precise amount of damage. *Earls v. King*, 785 S.W.2d 741, 744 (Mo. App., S.D.1990). We note, however, that the mere occurrence of an injury may not necessarily coincide with the accrual of a cause of action.

■ This court recently decided a very similar case in *Community Title v. Safeco Ins. Co.*, 795 S.W.2d 453 (Mo.App., E.D. 1990). An owner of a building directed an insurance agent to procure the necessary fire coverage, and the building was subsequently destroyed by fire. Allegedly due to the agent's negligence, the coverage was not as requested, and was quite insufficient. The agent moved for summary judgment on statute of limitations grounds, claiming, as here, the limitations period began to run when the policies were delivered. *Id.* at 458. Reversing the trial court's grant of summary judgment in favor of respondent's agent, this court stated:

[At] the time the policies were delivered, appellants had no claim against [respondent] because none of the risks appellants sought to insure against had occurred ...

*Community Title*, 795 S.W.2d at 459. Here, quite obviously, none of the malpractice litigation had occurred by 1979, and Dr. Smith had no inkling his personal assets were at stake when the suit was initiated in 1985. Therefore, none of the risks Dr. Smith sought to protect against had occurred, either. In an action on contract, a cause of action accrues upon a defendant's failure to perform at the time and in the manner contracted, and a statute of limitations begins to run when a suit may be maintained. *Davis v. Laclede Gas Co.*, 603 S.W.2d 554, 555 (Mo. banc 1980).

Furthermore, appellants herein could not have been aware of any damage when the policies were delivered in 1979, because Dr. Smith (whose interest in this litigation has been assumed by appellants) is entitled to rely on the insurance experts at RBH to procure the requested coverages. *Martin v. Crowley, Wade & Milstead, Inc.*, 702 S.W.2d 57, 58 (Mo. banc 1985). As with any relationship between a layman and an expert, the layman has no duty to double-check the expert's work. *Id.*

For the same reason, this cause of action could not have accrued when suit was filed in 1985 because Dr. Smith still had a right to rely upon RBH's expertise. It would be absurd to require lay parties, in addition to hiring a professional, to also have to make their own independent layman's investigation to ascertain whether their professional agent had done its job properly. *Thorne v. Johnson*, 483 S.W.2d 658, 663 (Mo.App., K.C.D.1972). Dr. Smith is no exception to this reasoning. He had no way of knowing, nor should he have known, that he would be damaged directly (i.e. personally) when the suit was filed in 1985.

Our reasoning here is in accord with the cases of *Southern Cross Lumber v. Becker*, 761 S.W.2d 269 (Mo.App., E.D.1988) and *Dixon v. Shafton*, 649 S.W.2d 435 (Mo. banc 1983). In each of these cases, the court reasoned that the right of action accrued when the party first saw he would sustain damage. In *Southern Cross Lumber*, this occurred when a lien waiver was used to defeat Southern Cross Lumber's

claim for a mechanic's lien, not when the lien waiver was signed. *Southern Cross Lumber,* 761 S.W.2d at 271. In *Dixon,* the parties sustained ascertainable damage when their attorney informed them of his mistake, not when the mistake itself was made. *Dixon,* 649 S.W.2d at 438.

In the case before us, Dr. Smith had every right to expect he was insured until notified to the contrary. We are persuaded by appellants' contention that the cause accrued when coverage was denied. The record is unclear regarding when this notification occurred, if it occurred at all. It has long been the rule that the burden of establishing the statute of limitations defense lies with the party who asserts it. *Southern Cross Lumber,* 761 S.W.2d at 271. Because the above date does not appear in the record, respondents' statute of limitations defense fails for lack of proof. Therefore, we must reverse the trial court's grant of summary judgment in favor of respondents, and remand this issue for further proceedings.

## CONTRACT REFORMATION CLAIM

■ Appellants also filed suit in equity for reformation of the insurance contract. Appellants' petition asks the court to write the allegedly requested coverage into the insurance policy. Respondents once again assert only that the statute of limitations has lapsed, and appellants' claim is time barred. On this issue, we agree with respondents.

All parties agree the applicable statute of limitations regarding contract reformation is ten years. RSMo § 516.110 (1986); *See Citizens Bank of Festus v. Frazier,* 352 Mo. 367, 177 S.W.2d 477, 482 (1944). Regarding when the cause of action accrues, the Missouri Supreme Court has held the limitations period begins running as soon as the party can sue. *Stark v. Zehnder,* 204 Mo. 442, 102 S.W. 992, 995 (1907). In *Stark,* the party seeking reformation acquired the right to sue when the mistake was made; it need not wait until an ancillary dispute arises. *Id.* The court's reasoning in *Stark* is quite specific:

[T]he plaintiffs' right to have the contracts reformed accrued as soon as the mistake occurred. They were not compelled to wait until [defendant] should make a breach in his promise to pay.... If, the next day after these contracts were delivered, the plaintiffs had filed a suit in equity to have them reformed, based on the same allegations that are now made, it would have been no valid plea, either in bar or abatement, for the defendant to have answered that the suit was premature. *Id.*

Some years later, the Eighth Circuit cited *Stark* when deciding a similar case. *Kithcart v. Metropolitan Life Ins. Co.,* 150 F.2d 997 (8th Cir.1945). The Eighth Circuit arrived at the same resolution as the Missouri Supreme Court, and for the same reasons. Based on the Missouri Supreme Court's controlling opinion in *Stark,* we hold that judgment on the pleadings was appropriately entered in favor of respondents on the contract reformation claim. In the last paragraph of its brief, respondent Momedico contends appellants' suit should be disallowed due to unclean hands and laches. Though the subject of equitable estoppel may bear closer scrutiny, we note that it was not raised at the trial court level, nor was it adequately briefed. We, therefore, cannot review this issue, as it is not properly before us.

The judgment of the circuit court is affirmed in part, and reversed in part.

SMITH, J., concurs in part and dissents in part in separate opinion.

BLACKMAR, Senior Judge, concurs in part and dissents in part in separate opinion.

SMITH, Judge, concurring in part and dissenting in part.

I concur in the opinion of Judge Gaertner as it pertains to count I—the contract reformation count. I respectfully dissent from that portion of the opinion dealing with counts II, III, IV—the contract and negligence counts.

The trial court sustained the motions of defendants for judgment on the pleadings

on the basis that all counts were barred by the statute of limitations. It is well settled that if the petition shows on its face that it is barred by the statute of limitations and if the bar may be obviated by some exception in the statute the facts stated in the petition should show such exception. In short, the exception relieving plaintiff from the bar of the statute should be pleaded by him. *Wilbur Waggoner Equipment and Excavating Company v. Clark Equipment Company*, 668 S.W.2d 601 (Mo.App. 1984) [2]. The petition alleges (1) that in 1979 Dr. Smith requested issuance of a policy of malpractice insurance containing prior acts coverage back to 1971, (2) that in 1979 defendant Missouri Medical issued its policy with prior acts coverage back only to 1976, (3) that in July 1985 suit was filed against Dr. Smith for injury sustained by Keith Nuspl during birth as a result of Dr. Smith's malpractice, (4) that Dr. Smith was served in November 1985, (5) that judgment was entered against Dr. Smith by consent on January 8, 1991, and (6) on that date the current suit was filed. On its face the petition shows issuance of the policy in 1979 and suit against Dr. Smith in 1985. This case was filed in 1991, more than five years after either of those dates.[1] Nothing in the pleading interposes any exception to the statute of limitation. On the face of the pleadings the judgment entered was correct.

Plaintiffs attached to their memorandum in opposition to the motion for judgment on the pleadings certain documents including the insurance policy, interrogatory answers in the suit against Dr. Smith, and correspondence. The record does not indicate that the trial court considered these materials in making its ruling. If we assume that it did so then the order which it entered is more properly a summary judgment than a judgment on the pleadings. In view of the result reached by the majority I will assume that the majority considers that the documents are properly before us and may be considered.

Included in the documents are the Limited Prior Acts Endorsements, one covering the doctor as an individual and one covering his professional corporation. Both specifically provide for coverage commencing in January 1976 through January 1979. In an accompanying letter the insurance company in highlighted type directed that the copy of the endorsement be signed and dated and returned to the company in order to effect the endorsement. Both documents bear a signature purporting to be Dr. Smith's. There is no suggestion they are not Dr. Smith's signatures. Both documents also reflect a substantial premium for the coverage provided. The actions before us are premised upon breach of contract in failing to provide prior acts coverage prior to 1976 and for negligence in failing to provide such coverage. In view of the documents referred to above there is considerable merit to defendants' contention that the statute commenced running in 1979 when Dr. Smith was aware that the coverage he allegedly sought had not been furnished. This is not a situation where the insured was led to believe he was receiving a coverage which he was not. The specific coverage was called to the doctor's attention, he signed copies of the endorsements acknowledging his acceptance and knowledge of the coverage provided, and he paid a substantial premium for the identified coverage. In the contemplation of the law he was aware at that time that the coverage which it is now alleged was promised was not provided. I do not find *Community Title Company v. Safeco Insurance Company of America*, 795 S.W.2d 453 (Mo.App.1990) [5] applicable.

Assuming, however, that *Community Title* is applicable it does not warrant the conclusion arrived at by the majority. The statute there was held to have been triggered by the loss allegedly insured against.

---

1. The majority opinion does not reach the question of the applicable statute of limitation on the contract claim. The pleading premises recovery on the failure to issue the policy orally agreed upon. The written policy included in the legal file clearly reflects no prior acts coverage prior to 1976. The contract claim is based on the breach of an alleged oral contract and is covered by § 516.120, RSMo 1986, the five year statute.

Here the insurance was to protect Dr. Smith from lawsuits arising from his malpractice. It provided coverage for both defense of the action and liability for an ensuing judgment. When Dr. Smith was served with the suit papers he was made aware that the event against which he had allegedly insured himself had occurred. His insurance policy clearly advised him that it did not provide coverage for events occurring prior to 1976 and the event for which he was being sued predated that time. If the defendants were guilty of breach of contract and/or negligence Dr. Smith was or should have been aware of that when he received the suit papers. The damage resulting from those breaches was at that time sustained and the fact of damage was capable of ascertainment. The suit papers were served more than five years prior to the filing of this suit.

I am unable to conclude, as Judge Blackmar does, that *State ex rel General Electric Company v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984) and *Rowland v. Skaggs Companies*, 666 S.W.2d 770 (Mo. banc 1984) are applicable. Those cases arise in the framework of contribution and indemnity. They held that when one has a right of contribution or indemnity against another the statute of limitations does not begin to run until the party seeking indemnity is obliged to make good on the obligation for which reimbursement is sought. This is not a contribution or indemnity case. Dr. Smith's rights or obligations under his alleged contract did not need to await the outcome of the underlying lawsuit in order to mature. They were triggered by the lawsuit.

I would affirm the judgment of the trial court.

CHARLES B. BLACKMAR, Senior Judge, concurring in part and dissenting in part.

I agree that the trial court erred in entering judgment on the breach of contract and negligence counts. It cannot be determined from the fact of the petition that the statute of limitations was a bar to the action.

I am not sure that Judge Gaertner enunciates the appropriate standard for determining when the statute begins to run. In *State ex rel. General Electric Company v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984) and *Rowland v. Skaggs Companies, et al.*, 666 S.W.2d 770 (Mo. banc 1984), our Supreme Court held that, when one has a right of contribution or indemnity against another, the statute of limitations does not begin to run until the party seeking indemnity is obliged to make good on the obligation for which reimbursement is sought.

Here the defendant physician had no reason to believe that he might be held liable for Keith's injuries, until suit was filed. As Judge Gaertner's opinion points out, the doctor did not know that he might suffer loss until the defendant insurer declined coverage. Even then, the doctor could not know the full extent of his loss until judgment was rendered or settlement made. If one follows the logic of *General Electric* and *Rowland*, the statute would not commence until the substantial extent of liability was known, which presumably would be when a judgment is entered on which execution may issue. (Although *General Electric* and *Skaggs* might indicate that the statute does not run until some part of the judgment is paid, I hope that future courts will not go this far.)

I am at a disadvantage in considering the cases just cited because I dissented in *Rowland* and declined to associate myself with the dicta in *General Electric*. I invited the Court to devise a different standard for dealing with indemnity problems brought to the fore by *Missouri Pacific Railroad Co. v. Whitehead and Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978) and *Safeway Stores, Inc. v. City of Raytown*, 633 S.W.2d 727 (Mo. banc 1982), so as to avoid the open-ended liability which the opinions necessarily imposed. The Court nevertheless adhered to the opinions, and thereby established the controlling law.

Those cases might be distinguished from this one because here the defendant doctor might realize, long prior to final resolution of the case, that he would suffer some expense in defending the claim unless he

had insurance coverage. But the teaching of the cases seems to be that the mere anticipation of damage does not trigger the statute. The doctor, of course, could have filed a declaratory judgment suit as soon as coverage was declined, but we do not usually require the filing of anticipatory litigation in order to interrupt the running of the statute of limitations. The option of abiding the result and then seeking indemnity has usually been accorded. I sense no difference in principle between this case and the earlier ones.

One of the purposes of the statute of limitations is notice. The petition indicates that the insurance company and the broker had notice when the doctor sought a defense.

I am content to reverse and remand on Count I so that the trial court may flesh out the record as to the operative facts governing coverage and limitation. In so doing I of course express no opinion on the other troublesome issues in the case. See *Holiday Inns, Inc. v. Thirteen Fifty Investment Co.*, 714 S.W.2d 597 (Mo.App., 1986.)

If one were to follow the hoary case of *Stark v. Zehnder*, 204 Mo. 442, 102 S.W. 992 (Mo.1907) mechanically, then affirmance on the contract reformation count might follow. There the Supreme Court held that the statute of limitations to reform a deed of trust so as to include more land began to run when the instrument was delivered, rather than from the time of default. I consider the case inconsistent with the rule of *State ex rel. General Electric Company v. Gaertner*, 666 S.W.2d 764 (Mo. banc 1984) and *Rowland v. Skaggs Companies, Inc.*, 666 S.W.2d 770 (Mo. banc 1984). The action for reformation is simply an equitable remedy which is an alternative to the legal remedy sought in Count I. The statute of limitations, indeed, has only assimilative application to equitable claims, which are governed by the equitable doctrine of laches. See *General Electric*, 666 S.W.2d at 767, and authorities there cited. The statute of limitations should not run on an equitable reme-

dy when it does not run on a legal action involving the same operative facts.

My position is consistent with *A.P. Green Refractories v. Duncan*, 659 S.W.2d 19 (Mo.App.1983) in which, relying on *Bramhall v. Bramhall*, 216 S.W. 766 (Mo. 1919), the court held that the statute of limitations did not run on an action to reform a mineral deed until the possessory rights allegedly conveyed by the deed were threatened. These holdings give strong indication that the rule of *Stark* does not reflect the current state of the law.

So I would reverse the judgment on Count II also, and would remand the case for the development of the record in the trial court.