# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3669

_____

Larry Brown

*Plaintiff - Appellant*

v.

CRST Malone, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 26, 2013
Filed: January 3, 2014

_____

Before MURPHY, MELLOY, and SHEPHERD, Circuit Judges.

_____

MELLOY, Circuit Judge.

Larry Brown brought suit against CRST Malone ("CRST") in Missouri state court, alleging that CRST negligently failed to maintain his workers' compensation insurance coverage. After CRST removed the case to federal district court,[1] the court

_____

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

granted summary judgment to CRST, holding that Brown's action was barred by the applicable Missouri statute of limitations. Brown appeals, arguing that the statute of limitations began to run much later than the district court determined. For the following reasons, we affirm.

I.

Larry Brown contracted with CRST to drive a truck as an independent owner-operator. In 2001, CRST entered into an agreement with Associated Contract Truckmen, Inc. ("ACT") to provide group workers' compensation insurance for the company's contractors, which included Brown. Brown elected to participate in the program and signed the necessary forms. CRST then withheld insurance premiums from Brown's paychecks.

ACT contracted with AMS Staff Leasing ("AMS") to procure insurance for CRST's independent contractors. AMS subsequently contracted with CNA to provide the workers' compensation insurance. Disputes later arose between AMS and CNA, causing CNA to cancel the CRST contractor insurance policy in June 2002. Brown was unaware of the cancellation, and AMS did not notify ACT that the insurance policies were cancelled. Despite the cancellation, CRST continued to take deductions from Brown's paycheck, even though the money never reached an insurance provider.

On July 21, 2002, Brown was injured while making a delivery for CRST, allegedly rendering him permanently disabled. On July 21, 2003, Brown filed for workers' compensation with the Missouri Division of Workers' Compensation, naming ACT, AMS, and CRST as his policy providers. He began to receive biweekly workers' compensation payments of $750. On March 8, 2004, a representative for ACT informed Brown's attorney that Brown would no longer receive benefits and that payments would cease immediately because Brown's "restrictions [were] not related to his work injury." Brown's attorney then contacted CRST, ACT, AMS, CNA, and

the Missouri Department of Insurance in an attempt to establish which company was responsible for payments and to prove that Brown was entitled to coverage for his disability from whichever company was responsible for that coverage.

On February 24, 2005, Brown learned there was an additional problem in his attempt to reinstate his workers' compensation payments—he may not have had a valid policy at the time of his injury, much less a policy that provided coverage for his injury. On that date, a Consumer Service Specialist at the Missouri Department of Insurance wrote a response to Brown's attorney's inquiry regarding Brown's denial of coverage. The letter informed Brown that CNA had terminated CRST's insurance policy on June 20, 2002,[2] one month prior to Brown's injury. The letter stated that "[b]ased on the evidence presented," the Department of Insurance did not have a "clear basis to continue its investigation of [the] matter." Following receipt of this information, on March 8, 2005, Brown's attorney wrote to Kevin Dinwiddie, an Administrative Law Judge with the Missouri Division of Workers' Compensation. The letter stated that Brown acknowledged that CNA and the Missouri Department of Insurance had taken the position that Brown was not insured at the time of his injury. The letter requested a hearing on the matter because CNA had not provided evidence to support its position.

On July 31, 2008, over three years later, an Administrative Law Judge with the Missouri Division of Workers' Compensation ruled that Brown was not insured at the time of his injury. The opinion stated, in part:

> [T]here is competent and corroborating evidence establishing that at the time of Brown's July 21, 2002 injury there was no valid workers' compensation insurance in place for him; the evidence establishes . . . that Brown's workers' compensation insurance (obtained through the

---

[2] An ALJ for the Missouri Department of Workers' Compensation later found this date to be May 30, 2002. This discrepancy is not material to this appeal.

most convoluted of ways) was no longer in effect after May 30, 2002. . . . [A]t the time of the claimant Brown's July 21, 2002 injury he was not covered by a valid workers' compensation insurance policy.

On March 17, 2011, Brown filed suit against CRST in Missouri state court, alleging that CRST acted negligently in failing to maintain Brown's workers' compensation insurance. On September 1, 2011, CRST removed the suit to federal court on the basis of diversity jurisdiction. 28 U.S.C. § 1441(a); 28 US.C. § 1332(a)(1). On October 3, 2012, the district court granted summary judgment to CRST, ruling that Brown's action accrued prior to March 2006 and therefore was barred by the Missouri five-year statute of limitations for such claims. Mo. Ann. Stat. §§ 516.100, 516.120. Brown appeals.

II.

We review a district court's grant of summary judgment *de novo*. Lexington Ins. Co. v. Integrity Land Title Co., 721 F.3d 958, 974 (8th Cir. 2013). For a statute of limitations defense, "[i]t has long been the rule that the burden of establishing the statute of limitations defense lies with the party who asserts it." Nuspl v. Mo. Med. Ins. Co., 842 S.W.2d 920, 923 (Mo. Ct. App. 1992). In this case, CRST bears the burden of establishing that Brown's claim was not filed within the five-year statute of limitations provided in Mo. Ann. Stat. §§ 516.100 and 516.120.

Both parties agree that Sections 516.100 and 516.120 impose a five-year statute of limitations on Brown's claim. The parties disagree when the statute of limitations began to run in this case. In its summary judgment order, the district court determined that the statute of limitations started running on March 8, 2005, when Brown's attorney acknowledged that CNA and the Missouri Department of Insurance believed that Brown did not have insurance coverage at the time of his injury.

-4-

In this appeal, Brown asserts two theories for why he believes the five-year statute of limitations had not run when he filed his lawsuit against CRST on March 17, 2011. We address each theory in turn.

## A. Last Item of Damage Theory

Brown's first theory is that the statute of limitations will not begin to run until his death. Brown argues that Mo. Ann. Stat. § 516.100 supports his position that the statute of limitations on his claim would not begin to run until his last payment would be due, which he alleges would be upon his death. Section 516.100 reads, in part:

> [T]he cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Specifically, Brown believes that the phrase "the last item" of damage means the statute of limitations should not begin to run on his claim until the time when he would collect his last workers' compensation payment. Since Brown is permanently disabled and believed he was eligible to receive payments for life, Brown argues that his "last item" of damage will not occur until the payment immediately preceding his death, which is also when Brown believes the statute of limitations should begin to run.

Brown relies heavily on the Missouri Supreme Court case Sabine v. Leonard, 322 S.W.2d 831 (Mo. 1959), to support his argument. This reliance is misplaced. Sabine dealt with the repayment of a promissory note. Id. at 832. The court held that because the debt was to be repaid in monthly installments, the statute of limitations for the creditor to sue the debtor did not begin to run until the last payment was due.

-5-

Id. at 838. In contrast, in this case there was a single wrong—CRST's alleged failure to maintain insurance coverage—rather than a series of continuing wrongs, which were the repeatedly missed payments on the promissory note. Thus, Sabine is inapposite. Further, Brown's argument contravenes one of the purposes of creating a statute of limitations in the first place: to encourage timely suits. Under Brown's theory, he would be able to bring his claim possibly decades after the sole alleged injury occurred.

Brown offers no authority to support his contention that the statute of limitations begins to run only upon his death. His argument ignores Missouri cases that directly address the applicable statute of limitations for insurance disputes. See, e.g., Branstad v. Kinstler, 166 S.W.3d 134, 136–37 (Mo. Ct. App. 2005) (determining that the five-year statute of limitations began to run when the plaintiff "received notice that his carrier denied coverage" for his loss); Nuspl, 842 S.W.2d at 922 (stating that a cause of action accrues when a party first sees that he will sustain damage). Brown's "last item" argument contradicts these cases by focusing exclusively on the "last item" language. Rather, as these cases show, when Section 516.100 is read as a whole, the more appropriate inquiry is determining when Brown's damages became ascertainable.

## B. Damages Capable of Ascertainment

Brown's claim is more appropriately analyzed through a determination of when his damages were "sustained" and became "capable of ascertainment."[3] Mo. Ann. Stat. § 516.100. The district court held that Brown's damages were ascertainable on March 8, 2005, which was the date Brown's attorney acknowledged in writing the

---

[3] CRST argues that Brown did not raise this argument before the district court and therefore has waived it. While Brown focused almost exclusively on his "last item" argument before the district court, the issue of when Brown's damages were ascertainable has always been in dispute, and we will address it.

-6-

position of the Department of Insurance that Brown did not have valid workers' compensation insurance because CNA had canceled the policy. Brown argues that the statute of limitations started to run when the Missouri Division of Workers' Compensation definitively ruled on July 31, 2008 that Brown did not have insurance when he was injured. This argument places Brown's claim within the statute of limitations.

Under Mo. Ann. Stat. § 516.100, a "cause of action accrues for purposes of section 516.120 when damage is sustained and capable of ascertainment." Branstad, 166 S.W.3d at 136. "'[C]apable of ascertainment' refers to the fact of damage, not the precise amount of damage." Nuspl, 842 S.W.2d at 922 ("In an action on contract, a cause of action accrues upon a defendant's failure to perform at the time and in the manner contracted, and a statute of limitations begins to run when a suit may be maintained."). In Nuspl, a doctor believed he had malpractice insurance, and the court held that the doctor "had every right to expect he was insured until notified to the contrary." Id. at 923. The Nuspl court concluded that the cause of action "accrued when coverage was denied." Id.

Following Nuspl's reasoning, the statute of limitations may have begun to run even earlier than the district court decided. Arguably, the statute of limitations could have started when Brown was first denied payments on March 8, 2004. The district court noted this, but decided that "Plaintiff was unaware of which insurance company was purportedly denying coverage for his accident and was unaware that such coverage was being denied on the basis that there was no insurance policy in place at the time of his injury. Accordingly, Plaintiff's damages were not capable of ascertainment at the time of his injury." Brown v. CRST Malone, Inc., No. 4:11CV1527, 2012 WL 4711450, at *6 (E.D. Mo. Oct. 3, 2012). We agree. Plaintiff had no reason to suspect he entirely lacked insurance when payments stopped in 2004. At the time, he was told only that his injury was not considered work-related.

The present dispute, however, is not whether a policy provided coverage or not; rather, the dispute is whether Brown had a policy at all.

The Missouri Department of Insurance informed Brown that he did not have an insurance policy on February 24, 2005. Brown's attorney acknowledged this fact in a letter to an ALJ in the Missouri Division of Workers' Compensation on March 8, 2005, the date the district court determined as the date the statute of limitations began to run. Brown argues this date should be later—specifically, July 31, 2008, when the Missouri Division of Workers' Compensation determined that Brown did not have insurance coverage. Brown bases his argument on Wallace v. Helbig, 963 S.W.2d 360 (Mo. Ct. App. 1998).

In Wallace, a farmer used an insurance broker to obtain insurance for a farming operation. 963 S.W.2d at 361. After one of the farmer's employees was injured, the insurance company the broker had worked with sent the farmer a reservation of rights letter and filed a declaratory judgment action seeking a declaration of no coverage. Id. Eventually a court entered a declaratory judgment in the insurer's favor finding no coverage. Id. Five years after entry of the declaratory judgment, the farmer sued the broker for negligent failure to provide insurance coverage. Id. at 360. A five-year statute of limitations applied to the farmer's claim against the broker, and the farmer argued the limitation period began to run upon entry of the declaratory judgment order. Id. at 361.

The Missouri district court held that "the five year period [under Mo. Ann. St. § 516.100] began to run as soon as the company filed suit to declare that the policy they issued did not provide coverage." Id. The district court reasoned that "[i]t is well settled that it is not necessary that the total damages be ascertainable at that time . . . but only that Plaintiff have knowledge of the alleged wrong, and that some damages had accrued." Id. The Missouri Court of Appeals reversed, holding that the statute of limitations did not begin to run when the declaratory judgment suit was

filed, but rather, when the district court entered judgment that the insurance policy did not provide coverage. Id. The Court of Appeals reasoned that, "In the event the court had declared there was coverage, [the plaintiff] would not have had a cause of action against [the defendant] under any recognized legal theory[.]" Id. at 362.

Brown argues that Wallace dictates that the statute of limitations in this case did not begin to run until July 31, 2008—the date the Missouri Division of Workers' Compensation ruled that Brown did not have insurance coverage. While this argument has some force, we believe that it sidesteps the dispositive question presented in Section 516.100, which is to determine when Brown's damages were actually ascertainable and thus provided him with a cause of action against CRST. When viewed in this light, we do not believe that Wallace instructs that the statute of limitations begins to run only when there is a formal declaration from a court that a plaintiff does not have insurance coverage. Rather, Wallace supports our reading of Section 516.100, which is to require a case-by-case determination of when the plaintiff's damages became ascertainable.

In the present case, the Missouri Department of Insurance and the insurance provider, CNA, informed Brown in 2005 that his insurance had been cancelled in 2002 and that he did not have a policy at the time of his injury. Unlike in Wallace, Brown had actual knowledge that a governing regulatory body—the Missouri Department of Insurance—had determined that Brown did not have an insurance policy years before the Missouri Division of Workers' Compensation issued its ruling. Even assuming that Wallace could stand for a broader proposition that the statute of limitations does not run until there is a formal declaration by a court or regulatory body, Brown received this in the form of the Missouri Department of Insurance employee's letter stating that Brown's policy had been cancelled prior to Brown's injury. When Brown received this information, he was on sufficient notice of a potential claim against CRST to trigger the running of the statute of limitations.

Wallace is a Missouri Court of Appeals case and is useful only to the extent it is persuasive. See Riordan v. Corp. of Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints, 416 F.3d 825, 829 (8th Cir. 2005) ("Exercising diversity jurisdiction, we interpret Missouri law . . . attempting to forecast how the Missouri Supreme Court would decide the issues presented."); United Fire & Cas. Ins. Co. v. Garvey, 328 F.3d 411, 413 (8th Cir. 2003) ("Decisions of the various intermediate appellate courts are not [binding on this court], . . . [but] they are persuasive authority, and [we] must follow them when they are the best evidence of what [state] law is.") (alteration in original) (internal quotation marks omitted). Controlling Missouri Supreme Court precedent requires the application of an objective "capable of ascertainment test," which requires us to decide "when a reasonable person would have been put on notice that an injury and substantial damages may have occurred." State ex rel. Marianist Province of U.S. v. Ross, 258 S.W.3d 809, 811 (Mo. banc 2008). Brown was put on notice of his injury at least as early as his receipt of the letter from the Missouri Department of Insurance in 2005 that he did not have an insurance policy. There is no reason why Brown had to wait three additional years for the Missouri Division of Workers' Compensation to weigh in on the matter before filing suit. During this time, Brown continued to accrue ascertainable damages because he was not receiving the workers' compensation benefit payments that he believed he was entitled to receive from CRST and its network of insurance providers and brokers. Brown also was incurring damages in the form of attorneys' fees and other litigation expenses in pursuit of insurance that CRST had promised to provide. See Dixon v. Shafton, 649 S.W.2d 435, 438 (Mo. banc 1983) (finding that Section 516.100's statute of limitations began to run when appellants hired counsel because that action showed appellants knew a substantial claim existed).

Further, Branstad supports starting the statute of limitations at the date when CNA and the Missouri Department of Insurance informed Brown that he did not have an insurance policy (or, as the district court decided, a month later when Brown's attorney acknowledged in a letter that CNA had told Brown that he did not have

-10-

insurance). 166 S.W.3d at 137. In <u>Branstad</u>, the Missouri Court of Appeals held that the plaintiff's cause of action against his insurance agent for negligent misrepresentation regarding the scope of his insurance coverage "accrued when [the plaintiff] received notice that coverage was denied and, thus, the plaintiff was able to determine that he had sustained damage." <u>Id.</u> Brown's attorney acknowledged on March 8, 2005 that Brown did not have insurance coverage for his workers' compensation claim in her letter to ALJ Dinwiddie. Brown's damages, in the form of missed payments and attorneys' fees, had already been accruing for over a year, and he could have maintained suit against CRST at that time. Brown waited an additional six years to file his suit.

## III.

Because Brown did not bring this action within the applicable five-year statute of limitations, we do not need to address the merits of Brown's claim against CRST for negligent failure to maintain insurance coverage. We affirm the district court's grant of summary judgment in favor of CRST.

_____