Elizabeth EISENBERG, Appellant,

v.

Charles REDD, Barnet M. McKee,
and Brad Goss, Respondents.

No. SC 82624.

Supreme Court of Missouri,
En Banc.

Feb. 13, 2001.

Rehearing Denied March 20, 2001.

Richard W. Fischer, John T. Ahlquist, Clayton, for Appellant.

Mark G. Arnold, Roger K. Heidenreich, Larry D. Hale, Andrew T. Pickens, IV, St. Louis, for Respondents.

LIMBAUGH, Judge.

Appellant Elizabeth Eisenberg appeals the circuit court's entry of summary judgment in favor of respondents Barnet McKee and Brad Goss on her claim for professional negligence. Summary judgment was granted on the basis of a contractual release entered into between appellant and "the law firm of Husch & Eppenberger" releasing each from "any and all actions" by the other. After opinion by the Court of Appeals, Eastern District, this Court granted transfer. Mo. Const. art. V, sec. 10. The judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

In 1992, appellant retained the St. Louis law firm Husch & Eppenberger (law firm) to represent her in connection with the planning of her mother's estate. During

the representation, respondent McKee was "of counsel" to the law firm and respondent Goss was a partner. Although the law firm is currently organized as a limited liability company, the parties do not dispute that at all relevant times it was organized as a partnership. According to the mother's estate plan, appellant would qualify as beneficiary of about one-third of the estate if she complied with certain requirements set out in the will and codicils, and respondents gave appellant legal advice regarding her compliance with those requirements. The specific facts pertaining to this advice and to appellant's expectancy under her mother's will and codicils are reported in *Estate of Strick v. Eisenberg*, 934 S.W.2d 312 (Mo.App.1996). In *Estate of Strick*, the court of appeals held that appellant violated the terms of her mother's will and codicils and "relinquished her status as personal representative and beneficiary of her mother's estate." *Id.* at 315.

On or about February 22, 1994, more than two years before the decision in *Estate of Strick*, the law firm terminated its representation of appellant by mutual consent. Thereafter, the law firm billed appellant $15,672.07 for legal services rendered, but she disputed that amount as excessive. Respondent Goss resigned from the law firm on April 15, 1994. Two months later, on June 15, 1994, appellant and the law firm entered into a contract whereby she agreed to pay $12,000 as "full and final payment" for the law firm's representation, and both agreed to release the other from any legal claims arising out of the representation. The text of the release states:

> The Law Firm and Elizabeth Eisenberg hereby fully and forever release, acquit, and discharge the other and all of the other's successors and assigns from any and all actions, causes of action, claims and demands of whatsoever nature or kind arising out of any rights accruing to either of the parties hereto by virtue of the Law Firm's representation of Eliza-

beth Eisenberg at any time prior to the date of this Agreement.

Respondent McKee signed the contract on behalf of the law firm, but neither respondent is specifically named in the contract.

On February 20, 1998, appellant sued respondents alleging that they were negligent in representing her and that their negligence caused her disinheritance. Respondents filed a motion for summary judgment on the basis that the release entered into by the law firm and appellant absolved them individually from liability. After a hearing, the trial court entered summary judgment in favor of respondents.

This Court's review of the grant of summary judgment is de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Where the movant is a defendant in the lawsuit, and has pled an affirmative defense, a right to summary judgment is established by showing "there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly pleaded affirmative defense." *Id.* at 381 (emphasis removed). "[T]he movant bears the burden of establishing a right to judgment as a matter of law on the record as submitted." *Id.* at 382. The record is viewed in the light most favorable to the non-moving party, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376.

■ Appellant argues that release of the "law firm" pertained only to persons who were partners of Husch & Eppenberger on the date of the release, and because respondents were not partners at that time, and were not specifically named in the release, they were not included. To the contrary, respondents argue that release of the "law firm" included all lawyers associated with Husch & Eppenberger during appellant's representation.

■ Thus, the issue centers on the meaning of the term "law firm" as used in the release. Interpretation of a release depends on "the same principles applicable

to any other contractual agreement." *Andes v. Albano*, 853 S.W.2d 936, 941 (Mo. banc 1993). "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable [persons] may fairly and honestly differ in their construction of the terms." *Jake C. Byers, Inc. v. J.B.C. Investments*, 834 S.W.2d 806, 816 (Mo.App.1992). *See also J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club*, 491 S.W.2d 261, 264 (Mo. banc 1973). If there is no ambiguity, the court need not resort to construction of the contract, but rather the intent of the parties is determined from the four corners of the contract. *J.E. Hathman, Inc.*, 491 S.W.2d at 264.

■ Within the four corners of the contract at issue, the term "law firm" is reasonably susceptible to only one meaning, so it is not ambiguous. The law firm is the party entering the contract on the date it was signed, June 15, 1994. That party is described in the contract's preamble, which states:

> This Agreement and Mutual Release made and entered into this 15th day of June, 1994 by and between Elizabeth Eisenberg of Riverdale, New York and the law firm of Husch & Eppenberger (hereinafter called "Law Firm") a Missouri law firm whose principal place of business is 100 N. Broadway, St. Louis, Missouri 63102.

On June 15, 1994, the law firm of Husch & Eppenberger was a partnership, and as with all partnerships, it was not a legal entity separate from the individual partners. *Kelley v. DeKalb Energy Co.*, 865 S.W.2d 670, 671 (Mo. banc 1993). Therefore, the only persons included under the term "law firm," as it is used in the release provision, are the partners of Husch & Eppenberger on June 15, 1994, the date of the contract. At that time, neither respondent was a partner of the firm. Respondent McKee was "of counsel," that is, a "lawyer who is affiliated with a law firm, though not as a member, partner, or associate," BLACK'S LAW DICTIONARY, 352 (7th ed. 1999), and respondent Goss had left the firm altogether. Accordingly, neither respondent was released from liability.

■ Even if there is a latent ambiguity in the term "law firm" so that it could be read to include both current and former partners, the ambiguity must be resolved against respondents. Under the Uniform Partnership Law, sections 358.010 to 358.430, RSMo 1994, when respondent Goss resigned on April 15, 1994, the existing partnership was dissolved, and a new partnership, the one that actually entered into the contract, was formed. *8182 Maryland Assoc. v. Sheehan*, 14 S.W.3d 576, 580–81 (Mo. banc 2000). Thus, the partnership that executed the contract was not the same partnership that represented appellant. Instead, the new partnership entered into the contract, *inter alia*, to release the partners from any liability they may have had under the old partnership. In any event, because the contract and release was entered into by the new partnership, the composition of the new partnership controls. Again, neither respondent was a partner under the new partnership, so neither respondent was released from liability.

Having determined in the first instance that the contract is unambiguous and, thus, not susceptible to construction, it is unnecessary to address respondents' alternative argument that any ambiguity in the release must be resolved in respondents' favor because the release was drafted by appellant's lawyers. Nor is it necessary to address appellant's argument that under section 537.060, RSMo 1994, release of an employer does not release any unnamed employee.

The judgment is reversed, and the case is remanded for proceedings consistent with this opinion.

PRICE, C.J., WHITE, WOLFF and BENTON, JJ., concur.

HOLSTEIN, J., not participating.