# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT
_____

Nos. 01-1206EM, 02-2241EM, 02-2270EM
_____

| | | |
|---|---|---|
| _____ | * | |
| | * | |
| No. 01-1206EM | * | |
| _____ | * | |
| | * | |
| In re Popkin & Stern, | * | |
| | * | |
| Debtor. | * | |
| | * | |
| ------------------------------ | * | On Appeal from the United |
| | * | States District Court |
| Old Republic Insurance Company, | * | for the Eastern District |
| | * | of Missouri. |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| | * | |
| Cynthia Bitting; Lynn G. Carey; | * | |
| William E. Cooper; Jeffrey S. | * | |
| Gershman; Bennett S. Keller; Steven | * | |
| H. Leyton; James R. Nangle, Jr.; | * | |
| John O. Niemann, Pat Simons; | * | |
| Steven M. Stone; Alan N. Zvibleman; | * | |
| Thomas P. Rosenfeld; Donald L. Wolff; | * | |
| and The Bar Plan Mutual Insurance | * | |
| Company, | * | |
| | * | |
| Appellants. | * | |

_____

Nos. 02-2241EM, 02-2270EM
_____

In re Popkin & Stern,

Debtor.

-----------------------------

Old Republic Insurance Company,

Appellee,

v.

The Bar Plan Mutual Insurance
Company,

Appellant.

\* \* \* \* \* \* \* \* \* \* \* On Appeal from the United
\* States District Court
\* for the Eastern District
\* of Missouri.
\* \* \* \* \* \* \*

_____

Submitted:  January 15, 2003

Filed:  August 25, 2003
_____

Before BOWMAN, RICHARD S. ARNOLD, and BYE, Circuit Judges.
_____

RICHARD S. ARNOLD, Circuit Judge.


In 1991, Popkin & Stern was a troubled law firm, losing both clients and partners.  The firm has since ceased doing business and sought bankruptcy protection.

-2-

The question presented in this case is whether, and to what extent, the law firm's professional liability insurance carrier, Old Republic Insurance Company, is liable for a claim made against Popkin & Stern in October of 1991. Old Republic argues that it is not liable for this claim because Popkin & Stern dissolved — an event which would have terminated the policy — before the claim was made. We disagree; Popkin & Stern did not dissolve until after the claim was made. We also reject Old Republic's alternate argument that the loss on this claim should be spread between it and another insurer. We conclude that the "other insurance" clauses of the two policies involved are not "mutually repugnant." Old Republic is fully liable. The District Court's judgments to the contrary will be reversed.

I.

Popkin & Stern was a law firm organized under Missouri law. At the time relevant to this lawsuit, the firm was governed by an Agreement of Partnership dated July 1, 1990. The agreement explained:

> The term of the Partnership shall continue from the effective date of this Partnership Agreement until the death, retirement, or withdrawal of all Partners or until terminated pursuant to Article Twenty-Four hereof. . ..

Section 13.01 addressed the conditions under which a partner could withdraw from the partnership: "[a]ny partner may withdraw or retire from the Partnership at the end of any calendar month, after giving the Partnership at least sixty (60) days' notice in writing." And Section 24.01 provided that "[a] vote of two-thirds (2/3) of the Partners shall be required to liquidate and terminate the Partnership business." No other provision in the Agreement provides a method for dissolving the partnership.

The firm was experiencing serious financial difficulties throughout 1991, as it was losing clients and profitable partners. In September of 1991, the remaining partners decided that the firm was no longer a worth while endeavor. Thus, on September 30, 1991, all of the remaining partners signed letters of resignation that, despite the 60-day notice requirement of Section 13.01 of the Agreement, purported to be effective as of that date.[1] The partners took numerous contemporaneous steps in furtherance of their plan to wind up the partnership. For one, they set up a Liquidating Committee, which was to handle the winding-up process. The firm also fired the vast majority of its employees as of that date, keeping only a few employees to tidy up the firm's affairs. The firm also cancelled all outstanding credit cards and transferred its furniture to another law firm.

Even though the firm ceased normal law practice, the Liquidating Committee continued the winding-up process for a considerable period of time, and at least two partnership resolutions were drafted after September 30. First, a resolution drafted October 2, 1991, would have amended Section 13.01 of the partnership agreement to allow partners to resign with only five days' notice, rather than the sixty days' notice required by the existing agreement. It does not appear that this resolution was ever adopted by the partners. A second resolution, which proposed a vote to liquidate the partnership, was dated April 7, 1992. This resolution was not signed, and there is no evidence that it was adopted.

During this period, Popkin & Stern was insured under a "claims-made" professional liability insurance policy issued by Old Republic in November of 1990. The policy covered two classes of liability: (1) claims made during the policy period or within thirty days thereafter and (2) acts, errors, or omissions that might reasonably become claims so long as Old Republic was given written notice of the potential

---

[1]In their letters, two partners indicated that they had already resigned, effective September 4, 1991.

claim during the policy period. The policy was to last for one year, until November 1, 1991, but provided for early termination in certain circumstances:

> 8. Change of Status
>
> If there is a change of status in which the NAMED INSURED is:
>
> (a)    dissolved;
> (b)    acquired by another law firm; or
> (c)    merged into, or consolidated with, another law firm and the Named Insured is not the surviving entity.
>
> this Policy shall end on the date the change in status takes place . . ..

Thus, if the firm dissolved or was merged into a larger firm before November of 1991, the policy terminated on the date of the change in status.

On October 7, 1991, Popkin & Stern gave Old Republic notice of what has become known as the Resolution Trust Corporation (RTC) Matter. RTC, a government agency acting as receiver for a failed financial institution the law firm had represented, was investigating whether a partner at Popkin & Stern who had represented the financial institution had committed any malpractice. Subpoenas were issued for Popkin & Stern records on the matter. Old Republic initially acknowledged coverage of the RTC Matter, and agreed, along with two other insurance companies, to settle the matter with the complaining party. The other two insurers became involved in the suit because they had issued professional liability policies to two other law firms that now included former Popkin & Stern partners in their partnership. The Bar Plan Mutual Insurance Company, one of these companies, insured a law firm whose partners included twelve past Popkin & Stern partners.

Old Republic has since taken the position that the RTC Matter was not covered by its insurance policy because Popkin & Stern dissolved on September 30, 1991 — seven days before the claim was made, according to Old Republic. Old Republic sought declaratory relief in the United States Bankruptcy Court for the Eastern District of Missouri, where the law firm's bankruptcy case was pending, to determine its liability on the RTC Matter. In Count I, Old Republic asked the Court to find that it was not liable because Popkin & Stern dissolved on September 30, 1991, and no notice of the claim was given before that date. In Count III, Old Republic asked the Court to determine the respective liability of each of the insurance companies. Old Republic maintained that, if it were liable for the RTC Matter, it should share the costs with Bar Plan because each policy included an "other insurance" clause.[2] Old Republic maintains that these clauses are "mutually repugnant," as applying each clause literally would result in a total lack of coverage. Under well-settled precedent, so the argument goes, the inclusion of such "mutually repugnant" clauses in each policy results in the sharing of liability on the claim.

The Bankruptcy Court determined that Count I was a core proceeding and concluded that Old Republic was liable on its policy. Old Republic then appealed the matter to the District Court, which disagreed, concluding that Old Republic was not liable because Popkin & Stern dissolved before Old Republic received notice of the matter. Count III was deemed a non-core proceeding. The Bankruptcy Judge submitted recommended findings and conclusions to the District Court. The District Court concluded that the provisions of the insurance policies were "mutually repugnant," thus holding that Old Republic and Bar Plan should share coverage on the claim. Each of these judgments is now before this Court for review. For the reasons explained below, we reverse both judgments.

---

[2]Count III alleges that liability should be split between Old Republic, Bar Plan, and a third insurer. The claim against the third insurer has been settled, however, so for present purposes we need decide only the respective liability of Old Republic and Bar Plan.

## II.

We consider first the question of whether the RTC Matter was covered by the insurance policy issued by Old Republic. Old Republic does not contest that the RTC Matter is the type of claim that would be covered if the policy was in effect at the time that it was reported. Instead, Old Republic maintains that the policy was no longer in effect when the matter was reported, as Popkin & Stern "dissolved" — as this term is used in the insurance contract — on September 30, 1991. Appellants, on the other hand, maintain that the partnership did not dissolve on September 30, 1991, and the policy was therefore in effect on the day that the matter was reported to Old Republic (October 7, 1991). The argument over whether the RTC Matter was covered by the Old Republic policy, then, turns entirely upon the question of whether Popkin & Stern "dissolved" on September 30, 1991. The District Court agreed with Old Republic, concluding that Popkin & Stern dissolved on September 30, 1991.

As an initial matter, the parties disagree about the meaning that should be given to the word "dissolved" in the insurance policy. Old Republic argues that the term should be defined as it is under Missouri partnership law, while Bar Plan argues that "dissolved" should be given its more common everyday meaning. Before proceeding, we must resolve this dispute. The interpretation of the language of an insurance policy is a question of law. Columbia Mut. Ins. Co. v. Schauf, 967 S.W.2d 74, 76 (Mo. 1998) (en banc). In interpreting the terms of a policy, courts are to eschew technical definitions of terms in favor of the common understanding of the word unless it plainly appears that a technical meaning is intended. Rodriguez v. General Accident Ins. Co. of America, 808 S.W.2d 379, 382 (Mo. 1991) (en banc). When in doubt, courts are to adopt the reading of the policy that is more favorable to the insured. Hobbs v. Farm Bureau Town & Country Ins. Co. of Missouri, 965 S.W.2d 194, 197-98 (Mo. App. 1998).

Given the facts of this case, the word "dissolved" in the insurance policy must be defined by reference to the law of partnerships. Although courts generally eschew technical interpretations, we believe that interpreting "dissolved" to mean dissolved under Missouri partnership law is consistent with the specific factual context of this case and the language of the insurance policy. First, this policy was written to cover the professional liability of a general legal partnership. Given that "dissolved" is a legal term of art that applies to partnerships, it would be unreasonable to conclude that Popkin & Stern did not understand the use of the word "dissolved" in the insurance policy in this manner. Moreover, the language of the policy itself indicates that "dissolved" should be read in accordance with the law of partnerships. The other two events that trigger this section of the policy — the merger with or acquisition by another law firm where Popkin & Stern is not the surviving entity — are events which mark the end of the current partnership as a legal entity. We should read "dissolved" as being an event with a similar consequence. Reading "dissolved" as defined by partnership law accomplishes this goal — the dissolution of a partnership marks the end of its legal existence. We conclude that Popkin & Stern "dissolved" under the policy only when it dissolved under Missouri partnership law.

Popkin & Stern did not dissolve — as defined by the law of partnerships — on September 30, 1991, because the partners did not effectively invoke either of the means of dissolution laid out in the partnership agreement. To start, it is important to note that although the Missouri Uniform Partnership Act indicates that certain events, such as the withdrawal of a single partner, lead to dissolution of a partnership, these are merely default rules that can be supplanted by a partnership agreement. Haynes v. Allen, 482 S.W.2d 85, 88 (Mo. App. 1972). The Popkin & Stern partnership agreement did just that; the partnership agreement indicated that only two events could end the partnership: death or withdrawal of all partners, or a vote of two-thirds of the partners.

In light of the partnership agreement, it is clear that Popkin & Stern was not dissolved on September 30, 1991 — the partners neither effectively withdrew from the partnership under Section 13.01 nor voted to liquidate the partnership under Section 24.01. No party has alleged that any of the partners gave notice sixty days in advance of their September 30 resignation letters. Thus, the partners did not follow the strictures of Section 13.01. According to the terms of the Agreement, then, these letters could not effectuate immediate resignations. At best, these letters could be considered notice of intent to resign, which, under Section 13.01, could become effective November 30, 1991. In any event, these letters were not effective under the terms of partnership agreement as immediate resignations. Given that Old Republic does not allege that the partners adopted a dissolution resolution under Section 24.01 of the partnership agreement, the partners' actions on September 30, 1991, simply did not lead to the immediate dissolution of the partnership under the plain language of the partnership agreement.

The District Court nevertheless concluded that the firm dissolved on that date. The Court provided two rationales, which are both, in essence, conclusions that, notwithstanding the fact that the terms of the partnership agreement were not met, the facts indicate that the partnership was dissolved. First, the Court concluded that the resignations of the partners were effective without advance notice because Section 13.01 was not aimed at en masse resignations — only resignations by fewer than all of the partners. The Court decided that this provision was meant to protect remaining partners. The Court concluded that, as a result, Section 13.01 did not apply to this case, in which all partners resigned at once. We disagree. Section 13.01 does not limit itself to situations in which fewer than all remaining partners resign; it states that a partner cannot withdraw with less than sixty days' notice. Moreover, Section 13.01 is the only section of the partnership agreement that provides a means for partners to resign from the firm. There is simply nothing in the partnership agreement to support the conclusion that the partners can effectuate immediate resignations of all remaining partners. Moreover, reading such a provision into the agreement would

run contrary to Section 13.01, which on its face precludes immediate resignations. That being said, the partnership agreement did provide the partners with a method for dissolving the partnership on September 30, 1991— a vote of two-thirds of the partners. The partners did not avail themselves of this option.

The District Court also noted that, under Missouri law, a partnership can be dissolved by the mutual assent of the partners. Dist. Ct. Order at 13. The District Court concluded that the resignations of all partners on September 30 represented such mutual assent. But the language of the partnership agreement controls, not the Uniform Partnership Act. See Haynes, 482 S.W.2d at 88. Section 24.01 of the Partnership Agreement provided the partners with a method of expressing their mutual assent for the dissolution of the partnership — a vote of two-thirds of the partners. Thus, the partners were free to dissolve the partnership on September 30, 1991; they need only have adopted a liquidation resolution by two-thirds vote. They failed to do so. Certainly it is true that all parties to a contract may amend it as they please, say by shortening or eliminating the 60 days' notice required before withdrawals; but there is no indication that the partners thought they were doing that.

Because Popkin & Stern did not dissolve on September 30, 1991, the Old Republic policy did not terminate until November 1, 1991. The RTC Matter was thus reported within the period specified by the policy, making Old Republic liable for the loss.[3]

---

[3]Because we conclude that the policy was still in effect at the time the RTC Matter was reported, we need not address Appellants' second argument, that the RTC Matter was a claim reported within 30 days of the termination of the policy. This argument would require us to decide whether service of subpoenas is a "claim," an inquiry we need not undertake in this case.

III.

Having decided that the RTC Matter was covered by the Old Republic policy, we must decide whether coverage should be shared by Bar Plan, an insurer that insured twelve former partners of Popkin & Stern after they departed from the firm. Old Republic maintains that each policy was in effect at the time the RTC Matter was reported, each policy covered the claimed behavior, and each policy contained similar "other insurance" clauses. Old Republic argues that, as a result, we should disregard the "other insurance" clauses as "mutually repugnant" and prorate liability between the insurers. We disagree.

Insurance policies often contain "other insurance" clauses, which purport to reduce the insuring company's liability when there is other insurance to cover the same loss.

> These clauses fall into three categories: (1) *pro rata clauses* which provide that the insurer will pay its pro rata share of the loss, usually in the proportion which the limits of its policy bear to the aggregate limits of all valid and collectible insurance; (2) *excess clauses* which provide that the insurer's liability shall be only the amount by which the loss exceeds the coverage of all other valid and collectible insurance, up to the limits of the excess policy; and (3) *escape clauses* which provide that the policy affords no coverage at all when there is other valid and collectible insurance.

Distler v. Reuther Jeep Eagle, 14 S.W.3d 179, 183 (Mo. App. 2000). The Missouri courts have struggled with the question of how to treat these clauses, concluding that they are generally enforceable but refusing to enforce them when the clauses in all valid and collectible insurance policies are "mutually repugnant"— when enforcing

-11-

the clauses would leave the insured individual without coverage.  See, e.g., State Farm Mutual Automobile Ins. Co. v. Western Casualty and Surety Co., 477 S.W.2d 421, 426-27 (Mo. 1972) (en banc);  Arditi v. Massachusetts Bonding & Ins. Co, 315 S.W.2d 736, 743 (Mo. 1958).  Thus, as a general rule, when two insurance policies cover the same risk and contain closely similar "other insurance" clauses, the clauses are not enforced, and each insurer is liable for its pro rata share of the loss based upon a comparison of the policy limits.  Arditi, 315 S.W.2d at 743.

In this case, we are faced with similar, though not identical, "other insurance" clauses.  Old Republic's policy included a standard excess clause:

> This POLICY applies in excess of any other valid and collectible insurance available to the Insured, unless such other insurance is written only as specific excess insurance over the limit of insurance of this POLICY.  This POLICY shall not be construed as being subject to the provisions of any other insurance.

The Bar Plan policy, on the other hand, is a bit more complex.  The "other insurance" clause starts off by providing for pro rata sharing of liability:

> If an Insured has insurance provided by other companies against a Claim covered by this policy, the Company shall not be liable under this policy for a greater proportion of such Damages and Defense Expenses than the applicable Limit of Liability stated in the Declarations or as determined by LIMITS OF LIABILITY 3. bears to the total applicable limits of liability of all valid and collectible insurance against such claim . . ..

The clause, however, goes on to explain that:

. . . with respect to acts or omissions which occur prior to the inception date of this policy, the insurance hereunder shall apply only as excess insurance over any other valid and collectible insurance and shall then apply only in the amount by which the applicable Limits of Liability of this policy exceed the sum of the applicable Limits of Liability of all such other insurance.

The basis of jurisdiction in this case is diversity of citizenship, and state law, here the law of Missouri, supplies the rule of decision. Our duty is to apply Missouri law, not the rule of law that we might select if we were free to do so. In determining Missouri law, in the absence of any case precisely in point (and there is none here), our job is to predict what the Supreme Court of Missouri would do if faced with the case before us. In making this prediction, we are bound by previous decisions of that Court. The Supreme Court of Missouri is authoritative in these matters, and Missouri law is what that Court says it is. We may also look for aid to opinions of lower courts in Missouri, for example, the Missouri Court of Appeals, which sits in three Divisions. Opinions of the Court of Appeals, however, are not necessarily binding. They are evidence of the law of Missouri, but they cannot prevail against a contrary Supreme Court opinion, or if we find their reasoning inconsistent with a Supreme Court opinion.

We are aware of only two opinions of the Missouri Supreme Court relevant in the present situation. Old Republic relies on the earlier of these two opinions, Arditi v. Massachusetts Bonding & Ins. Co., supra, 315 S.W.2d 736. Two "other insurance" clauses were involved in that case, as they are here. One such clause, contained in a policy issued by Massachusetts Bonding & Insurance Company, read as follows:

The Massachusetts policy provided that its insurance, as to non-owned automobiles, "shall be excess insurance over

any other valid and collectible insurance available to the insured . . .."

315 S.W.2d at 738. The second clause, contained in a policy issued by Travelers Insurance Company, read as follows:

" . . . the insurance afforded by this policy shall be excess over any other valid and collectible insurance if the insured has other insurance against the loss covered by this policy."

Id. at 742.

The Supreme Court of Missouri declined to give effect to either of these clauses. Instead, it held that they cancelled each other out, so to speak, and apportioned insurance coverage between the two companies in proportion to their policy limits. The Court gave the following rationale for its decision, quoting Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958, 960 (9th Cir. 1952):

"In our opinion the 'other insurance' provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an "other insurance" provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think (they) must be held mutually repugnant and hence be disregarded.' "

Arditi, 315 S.W.2d at 743.

-14-

If the Massachusetts other-insurance clause had been given full effect, its policy would have provided no coverage, owing to the existence of the Travelers policy. If the Travelers clause had, likewise, been given full effect, its policy would have provided no coverage, owing to the existence of the Massachusetts policy. As a result, the insured would have had no coverage, a result that presumably was not intended by anybody. The Supreme Court of Missouri found no way to choose between the two clauses, and therefore decided to disregard them by adopting the pro rata solution described above.

We take it that, if two other-insurance clauses can be reconciled, or construed in harmony with each other in a rational manner, they should be. Contracts are meant to be taken seriously, and the basic principle of contract law is that promises should be kept. For this reason, the mere existence of some type of "other insurance" clause in more than one insurance contract does not automatically mean that the clauses will be disregarded. The second of the two Missouri Supreme Court opinions, this one relied on by Bar Plan, illustrates this principle. In State Farm Mut. Auto. Ins. Co. v. Western Cas. & Sur. Co., supra, 477 S.W.2d 421, two policies of insurance contained "other insurance" clauses. State Farm's policy read as follows:

> "The insurance with respect to a temporary substitute automobile, a trailer and a non-owned automobile shall be excess over other collectible insurance."

Id. at 426. Western's policy provided in relevant part as follows:

> "In consideration of the reduced rate of premium made applicable to [this] Garage Liability Insurance, it is agreed that . . . [i]f there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the

-15-

> applicable financial responsibility limit, no damages are collectible under this policy."

Ibid.

The State Farm Court distinguished Arditi. The clause in Western's policy, the Supreme Court held, was different from the other-insurance clause in the State Farm policy. In practical effect, they are both excess clauses, but the Western clause is more specific. It is a specific "no liability" clause, and was held to have been written with the possibility of the existence of an excess clause and another policy in mind.

Old Republic attempts to explain the different results in the two cases as due entirely to the fact that the Western policy recited that its clause was entered into "[i]n consideration of the reduced rate of premium made applicable to the" policy. It is true that the premium reduction is mentioned by the Court as part of the rationale for its decision. We do not, however, read State Farm as limited to cases in which similar recitations incur in insurance policies. In economic theory, it will always be true that a reduction in coverage will be reflected in the premium, even if no express reference is made in a policy or in the bargaining (if any) preceding the issuance of a policy. The more important consideration in State Farm, instead, seems to us to have been that the Western policy was phrased in terms of "no liability," instead of simpler language characterizing the policy in routine terms as excess with respect to other insurance. We concede that arguments can be made about where the line between Arditi and State Farm should be drawn, or, even, about whether such a line logically exists. We must take these cases as we find them, however, and assume that they are consistent. The State Farm Court certainly did not think it was behaving in a way inconsistent with Arditi, so our duty is to reconcile the two cases. We think the key to this reconciliation lies in the specific nature of the language in the Western policy. It was not the same kind of routine excess clause as that contained in the State Farm policy.

-16-

Here, the Bar Plan clause is more specific. Old Republic's clause is similar to the State Farm clause involved in the State Farm case. The Bar Plan clause, by contrast, begins with a rather routine pro rata provision, but ends with a specific provision with respect to "acts or omissions which occur prior to the inception date of this policy," a category that includes the acts underlying the RTC Matter. When the Bar Plan policy was issued, all of the events claimed to create liability to RTC on the part of Popkin &Stern had already occurred. The Old Republic policy, which we have held applicable to the RTC Matter, had already been issued. The Bar Plan policy's reference to "acts or omissions which occur prior to the inception date of this policy" appears to us designed specifically with the present situation in mind, just as the Western clause in the State Farm case was, in the view of the Supreme Court of Missouri, designed specifically with clauses such as State Farm's excess clause in mind. In this way, the two policies can be reconciled, the two clauses in question are not "indistinguishable in meaning and effect," and the Bar Plan clause can reasonably be held to prevail.

The parties cite various Court of Appeals opinions in their favor. We think Old Republic's best case is Planet Ins. Co. v. Ertz, 920 S.W.2d 591 (Mo. App. 1996). But Planet reads State Farm as rejecting the Arditi analysis. We consider this an unlikely reading of the two cases. Although fourteen years elapsed between the filing of Arditi and the decision in State Farm, the State Farm Court did not overrule Arditi, or even criticize it. The two clauses in the case before it, the Planet Court ruled, were similar, and, accordingly, the fact that one clause was more specific than the other did not matter to the Planet Court. In addition, the Planet opinion cites with approval Fremont Indem. Co. v. New England Reinsurance Co., 168 Ariz. 476, 815 P.2d 403 (1991), a case which, we concede, appears to support squarely Old Republic's position in the instant appeal. It might be possible for us to distinguish Planet, but we do not stop to make the attempt. It is sufficient for our purposes that Planet appears inconsistent with State Farm, and we do not feel at liberty to apply Arditi to the total exclusion of the State Farm reasoning.

The case which appears to us to be consistent with both <u>Arditi</u> and <u>State Farm</u> and which points in Bar Plan's direction, is <u>Smith v. Wausau Underwriters Ins. Co.</u>, 977 S.W.2d 291 (Mo. App. 1998). In this case, both policies contained excess-type other-insurance clauses, but the Wausau policy was held to prevail, on the ground that it was an umbrella policy, while the other policy at issue was a primary policy. The other policy, issued by Allied Mutual Insurance Company, did contain an excess clause, but, in the view of the Court, this clause did not convert the Allied Mutual policy from a primary policy into an excess policy.

In the case at bar, the Bar Plan and Old Republic policies are both primary in the ordinary sense, at least with respect to the generality of claims. In the case of acts or omissions committed before the inception of the Bar Plan policy, however, the policy is more like a true excess or umbrella policy than a primary policy. This class of claims is expressly carved out, and Bar Plan did not undertake to provide primary coverage for it. The policy does cover acts and omissions committed in the past, but it provides only excess coverage for these past acts. This is not a standard excess clause, and it is not indistinguishable in meaning and effect from the standard excess clause contained in the Old Republic policy. This difference is important because it underscores a difference in the intent of the two policies. When a seemingly primary insurance policy contains a standard excess clause, the Missouri courts interpret this clause not as an expression that the policy as a whole is an excess policy, but simply as an attempt on the part of a primary insurer to reduce its liability. The instant case is not so simple. The Bar Plan policy provides, in general, primary insurance, but it is excess only as to acts or omissions that occurred before its inception. This provision stands in contrast to the Bar Plan policy's pro rata clause for current transgressions.

This opinion may seem tortured to the reader. We have attempted to pick a path among the Missouri cases and the concepts discussed in them. Our holding is merely a prediction, but we hope it is better than a guess. In our view, the Supreme

-18-

Court of Missouri would uphold the Bar Plan clause. The two clauses are not mutually repugnant, and Old Republic is liable for the entire claim, it being conceded that the claim is within the limits of the Old Republic policy.[4]

## IV.

As to Count I (whether the Old Republic policy remained in effect after September 30, 1991), the Bankruptcy Court held against Old Republic, and the District Court reversed. We now reverse the judgment of the District Court, and remand the case to that Court with directions to enter an order affirming the judgment of the Bankruptcy Court.

As to Count III (whether the two other-insurance clauses cancel each other out), both the Bankruptcy Court and the District Court held the clauses mutually repugnant, with the result that Old Republic and Bar Plan were required to provide coverage pro rata. We have held to the contrary, believing that Old Republic provides sole coverage as to the claim involved in this case. This judgment is reversed, and the case remanded to the District Court for further proceedings consistent with this opinion.

It is so ordered.

---

[4]Old Republic, which prevailed on this issue in the Bankruptcy Court and the District Court, requests pre-judgment interest on the award made to it. Because we are concluding that Old Republic is solely liable, and are reversing the judgment in its favor, the propriety of an award of pre-judgment interest to Old Republic is a moot question. We therefore do not address it.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.