

## Missouri Court of Appeals
### Southern District
### Division One

| | | |
|---|---|---|
| DONNA COWGUR, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| vs. | ) | Case No. SD35962 |
| | ) | |
| JOEL MURPHY, JESSICA MURPHY, | ) | FILED: November 12, 2019 |
| | ) | |
| Defendants-Respondents, | ) | |
| | ) | |
| JEFFERY SPROUS, LISA SPROUS and | ) | |
| JOHN DOE REALTY, | ) | |
| | ) | |
| Defendants. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF BUTLER COUNTY

Honorable Michael M. Pritchett

AFFIRMED

Donna Cowgur ("Plaintiff") appeals the trial court's judgment granting summary judgment in favor of Joel and Jessica Murphy ("Defendants") on her claim for personal injuries she sustained as a result of a fall after stepping in a hole in the ground ("the hole") on property owned by Defendants and leased to third parties. Determining there is no genuine dispute that Defendants had no knowledge of existence of the hole, we affirm the trial court's judgment.

1

**Factual and Procedural Background**

Plaintiff was injured when she stepped into the hole with her right leg on property owned by Defendants and rented to Jeffery and Lisa Sprous on March 19, 2011. Defendants owned the property from 2002 until 2012. Defendants had lived on the property from 2002 until sometime in 2008. The property was rented to Paul Strozyk after Defendants moved out until early 2009. The property was thereafter rented to Jeffery Sprous and Lisa Sprous on August 1, 2009, pursuant to a written lease (the "lease"). Mr. and Mrs. Sprous lived on the property until sometime in 2011 after Plaintiff's injury.

Plaintiff filed this action seeking to recover damages for her personal injuries from Defendants alleging that Defendants were careless and negligent in that they "should have known that the hole existed on the property that was concealed by grass and Defendants failed to designate the hole as being a dangerous condition, or to fill the hole so it would no longer exist." The Defendants filed a motion for summary judgment asserting that they were entitled to judgment as a matter of law because "there is no evidence that the [Defendants] knew of the existence" of the hole. The trial court granted Defendants' motion for summary judgment and, accordingly, entered its judgment in their favor and against Plaintiff on her claim. Plaintiff timely appeals the trial court's judgment.

**Standard of Review and Legal Principles Applicable to Summary Judgment**

A review of a trial court's decision granting summary judgment is reviewed *de novo*. ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993). If the movant is entitled to judgment as a matter of law and no genuine issue of material facts exists, the trial court's decision will be affirmed. ***Id.*** at 377. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." ***Hargis v. JLB Corp.***, 357 S.W.3d 574, 577 (Mo. banc 2011) (quoting ***ITT Commercial Fin.***, 854 S.W.2d at 382). "The

2

record is viewed in the light most favorable to the non-moving party, according that party all reasonable inferences that may be drawn from the record." *Eisenberg v. Redd*, 38 S.W.3d 409, 410 (Mo. banc 2001) (citing *ITT Commercial Fin.*, 854 S.W.2d at 376).

"Facts come into a summary judgment record *only* per Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separately numbered paragraphs and a response addressed to those numbered paragraphs." *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 60–61 (Mo.App. 2016) (internal quotation marks omitted). "A trial court grants or denies summary judgment based on facts established by the summary judgment motion and responses thereto; our review is confined to the same facts and does not extend to the entire record before the trial court." *Id.* at 60.

On appeal, the criteria for determining if summary judgment was proper is "no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially." *ITT Commercial Fin. Corp.,* 854 S.W.2d at 376. "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *Id.* Our *de novo* review, however, does not grant an appellant license to craft arguments on appeal free from the constraints of Rule 74.04.[1] *Great S. Bank v. Blue Chalk Constr., LLC*, 497 S.W.3d 825, 836 (Mo.App. 2016).

None of Plaintiff's four points on appeal challenge Defendants' Rule 74.04 prima facie showing of a right to summary judgment as the summary judgment movant and defending party on Plaintiff's claim. *See id.* at 828-29 (discussing Rule 74.04 requirements for prima facie showing). Once Defendants made their prima facie showing, the burden shifted to Plaintiff, as the summary judgment non-movant, to show that one or more of the material facts shown by the

---

[1] All rule references are to Missouri Court Rules (2019).

Defendants to be above any genuine dispute is, in fact, genuinely disputed. *Id.* at 829 (citing

*ITT Commercial Fin. Corp.*, 854 S.W.2d at 381).

> To put a fact in genuine dispute, the non-movant may not rely on a general denial, but, instead, must support that denial with specific references to the discovery, exhibits or affidavits that demonstrate the specific facts showing that there is a genuine issue for trial. A genuine issue that will prevent summary judgment exists where the record shows two plausible but contradictory accounts of the essential facts.

*Id.* at 829 (quotation marks and internal citations omitted).

## Discussion

In accordance with the above principles, Plaintiff's points assert the existence of genuine

disputes as to three of Defendants' summary judgment material facts that each purport to negate

one of Plaintiff's elements facts. *See id.* (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d at

381) (right to summary judgment is established where defending party shows facts that negate

any *one* of the claimant's elements facts). Plaintiff's failure to show the existence of a genuine

dispute as to any one of the challenged material facts, therefore, is fatal to her claim and

dispositive of this appeal.

In her first point, Plaintiff claims a genuine issue exists "as to whether or not the

[D]efendants had or should have had knowledge of the hole in the yard[.]" We disagree.

> For each material fact the non-movant claims is genuinely disputed and therefore defeats the movant's prima facie showing of a right to judgment, the non-movant must direct the trial court to a particular numbered paragraph in movant's statement of uncontroverted material facts that is denied in the non-movant's response. The trial court then considers the movant's specific references in that numbered paragraph to the pleadings, discovery, exhibits, or affidavits attached to the movant's statement supporting the existence of that material fact, *see* Rule 74.04(c)(1); considers the non-movant's specific references to the discovery, exhibits, or affidavits attached to the response supporting the non-movant's denial of that material fact, *see* Rule 74.04(c)(2); and then compares the two sets of specifically referenced evidence to ascertain the existence of a genuine issue as to that particular numbered paragraph material fact. Rule 74.04 does not authorize the trial court to consider any other evidence as to whether a genuine issue exists as to that particular numbered paragraph material fact.

Our *de novo* standard of review means that we look at the summary judgment issues presented on appeal as the trial court should have initially under Rule 74.04, and we give no deference to the trial court's ruling. ***ITT Commercial Fin. Corp.***, 854 S.W.2d at 376. Therefore, a relevant, cogent, and logical argument on appeal that a genuine issue exists as to a particular material fact must necessarily track the Rule 74.04 requirements in the same manner as discussed in the preceding paragraph as applicable to the trial court.

***Great S. Bank***, 497 S.W.3d at 834.

Numbered-paragraph 8 in Defendants' statement of uncontroverted material facts asserts that "[Defendants] did not know of the existence of the hole at any time until well after the [P]laintiff's injury. [Affidavits of Joel Murphy and Jessica Murphy.]" Plaintiff's response to numbered-paragraph 8, in relevant part, is

**DENIED**. The lease gave them the right to do [sic] inspect the premises. ([Lease] para. 16). They also testified that they had placed the property for sale in 2008 and that a for sale sign was placed on the property (Depo. J. Murphy 6-7) which could have led to a hole being placed on the property.

Each of Defendants' affidavits as cited and relied upon by Defendants in support of this numbered-paragraph recites that "I did not know of the existence of this hole at any time until well after [Plaintiff's] injury."

As cited and relied upon by Plaintiff in her denial, paragraph 16 of the lease provides

16. **RIGHT OF INSPECTION**.

Landlord and Landlord's agents shall have the right at all reasonable times during the term of this Lease and any renewal of this Lease to enter the House for the purpose of inspecting the premises and/or making any repairs to the premises or other item as required under this Lease.

Also, the relevant testimony from pages 6 and 7 of Joel Murphy's deposition provides

Q      And prior to renting to the Sprouses, had you had the house listed for sale?

A      Yeah.  We did have it listed for sale.  When was that?  2008, I believe.

***

5

Q       Do you know whether there was ever a for sale sign in that yard prior to the accident that we're talking about here today?

A       Yeah.  There certainly was a for sale sign in the yard at some point.

Citing to and relying upon ***Reckert v. Roco Petroleum Corp.***, 411 S.W.2d 199 (Mo. 1966), Plaintiff contends that her asserted evidence supporting her denial of numbered-paragraph 8 creates a genuine issue as to Defendants' knowledge of the existence of the hole because it gives rise to "a reasonable inference that [Defendants] knew or at least should have known by using ordinary care that there was a hole in the yard." ***Reckert*** instructs that

> [t]he general rule is that the landlord is not liable to the tenant or to those on the premises under the tenant's title for injuries caused by a dangerous condition, whether natural or artificial, which existed at the time the tenant took possession under the lease.  This general rule is subject to an exception where at the time the lease is executed there is a dangerous condition of the premises involving unreasonable risk of physical harm to persons on the premises, which is known to the landlord and not known to the tenant and not discoverable by the tenant in the exercise of ordinary care. In such case there is a duty on the landlord to disclose to the tenant the existence of the dangerous condition and he is liable to the tenant or the tenant's invitees for injuries or death resulting from such condition if the landlord fails to disclose them to the tenant or conceals their presence from the tenant.

> Actual knowledge on the part of the landlord of the dangerous condition is not necessary to make a case under this exception. It is sufficient that the landlord had knowledge of facts from which he ought to have known, or will be presumed to have known, of the defect, or… that the landlord knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to expect that the lessee will not discover the condition or realize the risk.  The rule is thus stated… [t]he landlord, as a rule, need not, before leasing the premises, look for defects therein.  But if he has knowledge of facts that would lead a reasonable man to suspect that defects actually exist, he should disclose such facts to the prospective tenant.  If he fails to do so he will be charged with knowledge of what a reasonable inspection would have disclosed.  To impose any further obligation upon him would render him to a great extent an insurer against concealed defects and dangers.  On the other hand he cannot… close his eyes to facts that would lead reasonable men to act.[2] … [I]t is enough that the landlord

---

[2] The reported opinion has the word "not" immediately following the word "cannot" in this sentence.  Considering the context provided by the immediately preceding sentence and the use of the phrase "On the other hand" to begin this sentence, it appears that the repeated "not" is extraneous and included in error.

is informed of facts from which a reasonable man would conclude that there is danger.

*Id.* at 205 (internal citations and quotation marks omitted).

Contrary to Plaintiff's unsupported assertion otherwise, neither the right to inspect in the lease nor the referenced deposition testimony, either individually or considered together, give rise to any inference, much less a reasonable inference, that Defendants had *actual* knowledge of the existence of the hole. Rather, Plaintiff limits her argument under this point to her assertion that her evidence gives rise to a reasonable inference that Defendants had *constructive* knowledge of the existence of the hole, i.e. they should have known of the existence of the hole. It does not.

First, the right to inspect in the lease does not impose any obligation upon Defendants to do so. The mere existence of that right to inspect, therefore, cannot and does not give rise to *any* inference that Defendants exercised that right and actually inspected the property at any time during the lease term before Plaintiff was injured or that, even if so exercised, the Defendants acquired any information that would lead a reasonable person to suspect the existence of the hole. Any purported attempt to draw such inferences would not be based upon reason and logic, but rather, would be based solely upon rank speculation and imagination.

Second, the deposition testimony relied upon by Plaintiff directly supports that Defendants listed the property for sale in 2008 and that "at some point" there "was a for sale sign in the yard." Perhaps inferences could be drawn from this testimony that such a sign was placed in the yard in 2008 and that the placement of that sign created some type of hole in the ground someplace in the yard. Assuming, without deciding, that those inferences are reasonable, however, they do not give rise to any reasonable inference that any hole made by the placement of the sign in 2008 was the hole Plaintiff stepped in three years later in 2011. Any purported

7

attempt to infer a correlation between the location, size, or depth of the two holes would not be based upon reason and logic, but rather, would be based solely upon rank speculation and imagination.

Finally, the right to inspect and the deposition testimony when considered together do not combine in any manner to create any inferences as to Defendants' constructive knowledge at any particular time because each is directed toward different non-overlapping periods. The right to inspect first came into existence on the effective date of the lease on August 1, 2009. The deposition testimony, however, related to events occurring, at best, in 2008.

For the above reasons, Plaintiff has failed to demonstrate how her cited evidence in her denial of numbered-paragraph 8 gives rise to a reasonable inference, *see Eisenberg*, 38 S.W.3d at 410, that Defendants had actual or constructive knowledge of the existence of the hole at any relevant time. Accordingly, Plaintiff has failed to demonstrate the existence of a genuine issue, *see Hargis v. JLB Corp.*, 357 S.W.3d at 577, as to Defendants' lack of such knowledge. Plaintiff's first point is denied.

## Decision

Because our denial of Plaintiff's first point is dispositive of this appeal, as previously discussed, the trial court's judgment is affirmed.


GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – Concurs

WILLIAM W. FRANCIS, JR., J. – Concurs

8